LEMMON, Judge.
This appeal involves two contracts, (1) a written agreement to purchase a business known as the “Joy Lounge” and certain specified equipment, and (2) a verbal sublease of the immovable property used in the operation of the business.
Pascal Marcello commenced these proceedings by filing suit on the lease based on the failure of his sublessees, Frederick J. Bussiere and Virginia C. Bussiere, to pay the monthly rental payments. He further sought to sequester the equipment located on the leased premises. The Bus-sieres answered and alleged that the lease was to begin only after Marcello formally transferred the business and equipment pursuant to the written agreement to purchase, which allegedly was never done. They also filed a reconventional demand seeking the return of the purchase price of the equipment and of the rental for two months paid by them on a month to month basis, as well as the cost of good faith renovation and repairs and the loss of expected income.
After a trial on the merits, judgment was rendered awarding Marcello the rent due during the time the Bussieres occupied the premises. The judgment also annulled the sale and awarded the Bussieres the purchase price of the equipment, which was ordered returned to Marcello. Mar-cello appealed, and the Bussieres answered the appeal.
Marcello had leased the immovable property from the owner since 1960 and had previously subleased the premises as a cocktail lounge. However, the City of Gretna had revoked the alcoholic beverage license of the last operator of the lounge, and the premises had not been used for about six months prior to the negotiations pertinent to this lease.
Fred Bonvillion, a lifetime resident of the area, had become friends with the Bus-sieres, who had just moved from New Hampshire and were looking for a business opportunity. Upon learning from Bonvil-lion of the availability of the Joy Lounge, the Bussieres met with Marcello and inspected the premises and the equipment.
*287 On or about April 24, 1970 the parties entered into a written agreement to buy and sell “the following described business in Jefferson Parish, Louisiana, to-wit:
“That business known as ‘THE JOY LOUNGE’ located at 319 Huey P. Long Avenue, Gretna, Louisiana, and to all the equipment described as follows: * * * ” (Emphasis supplied)
The agreement further provided that the act of sale was to be passed within 30 days and the consideration of $6,500.00 was due at the time of the sale. Additionally, the parties agreed that the Bussieres would immediately “take possession of said business” and “assume all liabilities for the necessary expenses, taxes and insurance associated with the conducting of the said business.”
On May 14, 1970 the Bussieres paid the $6,500.00 purchase price of the business and equipment and then began extensive renovation of the premises. However, no formal act of sale nor written lease contract were executed. On June 8, 1970 they paid rent, electricity and insurance in the amount of $340.00.
The Bussieres abandoned renovation work in early July after they received information that the City officials would not issue an alcoholic beverage license. When they refused to pay any further rent in response to a July 16 letter from Marcello’s attorney, this suit was filed.
Apparently all parties were well satisfied with the agreements until the problem arose concerning the license. In that regard Bussiere testified that Marcello represented in the early negotiations that he was influential with the City officials and could obtain a license. He advised the Bus-sieres to complete the planned renovation, after which he would bring the proper officials to inspect the place and would obtain a license. When the Bussieres heard that the City officials did not intend to issue a license at that location, they abandoned the renovation and requested the return of their money.
On the other hand, Marcello testified that he did not offer or promise to obtain a license or to assist the Bussieres in obtaining one. As to the sale, he simply delivered the equipment when the purchase price was paid. As to the lease, he verbally agreed to sublease the premises for $250.00 per month, or $50.00 more than the monthly rental that he was paying, for a term of two years, with certain options for additional time. He further stated that he instructed his attorney to draft the formal sale and lease, but that the Bussieres refused to accept an appointment to sign these documents.
Marcello also observed that the Bus-sieres were well aware they were not buying a going business, since at the time of their inspections the place was closed, and he in fact had begun remodeling the premises.
The trial judge found that the parties had entered into a verbal lease of the premises and awarded Marcello the amount of rent due from the time the Bussieres occupied the premises until the time they effectively cancelled the lease because of the license problem. However, he annulled the sale on the grounds of failure of consideration and error, finding that the parties contemplated the sale of a business as well as equipment. He further found that the business “was inoperative, non-existent and possessed neither good will nor the ability to function in view of the attitude of Gretna officials toward its reputation.” Accordingly, he rendered judgment in favor of the Bussieres on their reconventional demand for the purchase price of the equipment, which was ordered returned to Marcello.
Essentially, the judgment of the trial court as to the sale turned on the conclusion that the principal consideration for the Bussieres’ consent was the purchase of *288 both business and equipment, not merely the equipment. We believe that conclusion was in error under the facts and circumstances of this case.
We agree that Marcello’s use of the word “business” in the agreement to purchase meant something in addition to the equipment itemized in that agreement. However, we believe that “business”, as used there, simply meant whatever good will and intangible assets were carried over from the former operations on the premises, including the use of the name “Joy Lounge.”
We are supported in this interpretation by the further provision in the written instrument that vendee could take “possession of said business” upon execution of the agreement to purchase. All parties were fully aware that there was no business in operation of which possession could be taken, since the Joy Lounge was not operating at the time the Bussieres inspected the premises nor at the time they executed the agreement to purchase. The right to take possession of the business simply gave them the right to commence operations immediately upon signing the executory contract without waiting for the formal sale.
We conclude that the existence of a business was not a principal consideration for which the Bussieres consented to the sale.
We view the crucial issue in this case a§ whether or not the sale and lease can be invalidated because of a defect or vice of consent grounded on fraud or error. C.C. art. 1819 et seq.
As to fraud, it is undisputed that Marcello was aware during the negotiations that the Bussieres intended to lease the premises and purchase the equipment for the purpose of operating a cocktail lounge. It is also reasonable to assume that the Bussieres would not have consented to the lease or the sale had they known they would be unable to use the premises for that purpose. Therefore, if Marcello believed that the Bussieres would not be able to obtain a license or would have considerable difficulty in doing so and did not reveal this, then he perhaps obtained their consent through fraud. C.C. art. 1847-1849. However, we do not believe the record supports a conclusion that Marcello had such a belief.
In this regard it is important to note that the trial judge did not find as a fact that Marcello had made any promises or representations about obtaining a license. Additionally, the trial judge did not annul the lease, which would have been the consequence of a finding of fraud, but rather he recognized and upheld the lease and awarded Marcello the amount of the rent due during the time the Bussieres occupied the premises.
Bonvillion testified that Marcello simply told the Bussieres he knew of no reason why they could not obtain a license. We are convinced this was Marcello’s belief, since he renewed his lease with the owner in August, 1970 after reaching the agreement with the Bussieres in May. Had he been aware that his sublessee would be unable to obtain a license for the premises, it is doubtful that he would have obligated himself for an additional five years by renewing the lease in this manner.
We therefore believe that a defect of consent caused by fraud was not proved in this case.
As to error, perhaps the contracts could be invalidated if in fact the premises were not licensable and both parties were in error as to this fact. However, we also do not believe that this defect of consent was proved in this case. First, the Bus-sieres failed to prove that the premises were not licensable. They did not apply for a license until after the present suit had been filed. Prior to that time they had only second hand information that the Chief of Police had stated he would not issue a license to that location. At the trial, in an attempt to prove that the premises *289 were not licensable, the Bussieres introduced a copy of their application on which was written the words “denied by Chief Miller”.
It is undisputed that the Chief of Police does not issue alcoholic beverage licenses, but simply makes a recommendation to the proper authorities regarding the issuance. Therefore, it was never proved that the issuing authority refused to issue an alcoholic beverage license. Furthermore, an alcoholic beverage license is issued to a person, not to a location or to specific premises. Ordinarily, denial of a license to a specific premises only occurs after a padlocking, and there is no evidence whatsoever in this case that the Joy Lounge had ever been padlocked or for any reason was not a location eligible for an alcoholic beverage license. The extent of the evidence in this' regard is that the license issued to the former operator had been revoked, which is insufficient to prove that the premises were not licensable.
Another reason we decline to invalidate the lease and the sale in the present case is that the Bussieres, after unconditionally binding themselves to purchase the equipment by signing the execu-tory contract, failed to take any action whatsoever to obtain a license within a reasonable time. They knew a license was necessary before they could begin operation of a lounge, and they realized they might have some difficulty in obtaining a license, since they were from out of state. In fact, they considered applying for a license in the name of Bonvillion, with whom they were to operate the lounge as partners. Yet without making application to or even contacting the issuing authority, they proceeded to borrow money, payment for and accept delivery of the equipment, and commence extensive renovation of the premises to their taste.
While the Bussieres might have been entitled to invalidate the contract shortly after the agreements were reached (had they presented sufficient proof regarding denial of the license), we decline to grant this relief after their negligent delays, during which time Marcello substantially changed his position to his detriment by obligating himself to lease the premises for an additional five years. This fault through inaction, when considered in relation to Mar-cello’s action in reliance on the agreement, renders invalidation of the contracts most inequitable under these circumstances. It is virtually impossible to return the parties to the status quo.
We conclude that Marcello is entitled to recover rent at the rate of $250.00 per month on the leased premises from May 15, 1970 through August 15, 1970, the period of occupancy found by the trial judge, subject to a credit for rent paid through July 15, 1970. We further find that the Bussieres agreed to lease the premises for a period of two years, but we decline to impose an acceleration clause into the verbal lease.
As to the sale, we conclude that the contract was perfected when there was consent as to the thing and the price. The Bussieres failed to prove they were entitled to have the contract voided because of a defect of consent.
Accordingly, that portion of the judgment of the trial court awarding plaintiffs in reconvention the sum of $6,500.00, can-celling and annulling the sale of May 14, 1970 and ordering the return of the items described in the sale to the vendor is reversed, and it is now ordered that the re-conventional demand of Frederick J. Bus-siere and Virginia C. Bussiere be dismissed. That portion of the judgment dissolving and vacating the writ of sequestration issued on August 7, 1970 is also reversed, and it is now ordered that the writ of sequestration be maintained and a lessor’s privilege on the sequestered property be recognized in favor of Pascal Marcello. The balance of the judgment of the trial court is affirmed. All costs of these proceedings are assessed to the defendants.
Reversed in part, affirmed in part.